IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LSF4 LOAN INVESTMENTS I, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No: 3:06-CV-0419-M |
| | § | |
| NED S. WEINGART, and | § | |
| RICHARD D. REINBERG, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or Alternatively, to Transfer Venue, filed on May 8, 2006, and Plaintiff's Motion to Transfer, filed June 14, 2006. The Court finds that it does not have personal jurisdiction over the Defendants, but instead of dismissing the case the Court **GRANTS** the Motion to Transfer.

### I. FACTUAL BACKGROUND

In December 1996, R.I.A. Melbourne Limited Partnership ("Melbourne"), an Ohio limited partnership, executed and delivered a five-million-dollar promissory note (the "Original Note"), secured by a mortgage and interest ("Mortgage") in some of Melbourne's property, to ORIX USA Corporation ("ORIX"), a Delaware corporation. When the Original Note was executed, Defendants Ned Weingart and Richard Reinberg were, respectively, the general partner and President of Melbourne. Under the terms of the Original Note, which was executed in Ohio before an Ohio notary public, Defendants agreed to joint and several personal liability on the

1

Certified a true copy of an instrument on file in my office on 8-23-06
Clerk, U.S. District Court,
Northern District of Texas
By _____ Deputy

Original Note in the event of a default by Melbourne. The Original Note contained both a Florida forum-selection clause and a Florida choice-of-law provision.[1] The Original Note required Melbourne to send payments by wired federal funds to a New York City bank, but expressly granted ORIX the right to change the address of payment by written notice.

In August 1999, Melbourne executed and delivered a renewal note ("Renewal Note") to ORIX, renewing and increasing its indebtedness to $5.8 million dollars. Defendants agreed to joint and several personal liability under the Renewal Note in the event of a default by Melbourne.[2] The Renewal Note was executed in Ohio before an Ohio notary public, and contained both a Florida forum-selection clause and a Florida choice-of-law provision.[3] The Renewal Note required Melbourne to send payments by wired federal funds to a New York City bank, but, like the Original Note, it provided that ORIX could designate a new address for

---

[1] These clauses read as follows: "This Note shall be governed by and construed under the laws of the State of Florida. Borrower hereby submits to personal jurisdiction in said State for the enforcement of Borrower's obligations under this Note, under the Mortgage and under the other Loan Documents, and waives any and all personal rights under the law of any other state to object to jurisdiction within such State for the purposes of litigation to enforce such obligations of Borrower." Def. App. at 7.

[2] This portion of the Renewal Note, which is the same as in the Original Note, is also referred to as the Guaranty ("Guaranty").

[3] These clauses read as follows: "Maker unconditionally and irrevocably agrees that any action or proceeding against Maker with respect to this Note or for the recognition or enforcement of any judgment rendered in any such action or proceeding may be brought in the United States Courts sitting in Brevard County, Florida or in the State courts of the State of Florida, sitting in Brevard County, as the holder of this Note may elect, and by executing and delivering this Note, Maker unconditionally and irrevocably accepts and submits to the non-exclusive jurisdiction of each of the aforesaid courts in persona generally with respect to any such action or proceeding for itself and in respect of its properties. . . . This Note and the rights of the parties hereunder shall be governed by, and construed and interpreted in accordance with, the laws of the State of Florida, without regard to conflict of law rules." Renewal Note, Appendix to Def. App. at 19 (emphasis in original).

2

payment upon written notice. The Renewal Note also provided that ORIX could assign the Renewal Note and that all the provisions in the Renewal Note, including the right to designate the location of payment, would inure to the benefit of ORIX's assignees.

In July 2000, ORIX assigned the Renewal Note and Mortgage to ORIX Real Estate Capital Markets, LLC, located in Dallas, Texas. In December 2003, ORIX Real Estate Capital Markets, LLC, subsequently assigned the Renewal Note and Mortgage to Plaintiff LSF4 Loan Investments I, LLC ("LSF4"), a Delaware limited liability corporation. Plaintiff contends that, before the assignment to LSF4, Melbourne directed at least ten payments to ORIX Real Estate Capital Markets in Dallas, Texas, at least two of which were Melbourne checks signed by Reinberg. Plaintiff further contends that Melbourne sent letters to ORIX Real Estate in Dallas regarding the Renewal Note and that Melbourne sent Weingart's and Reinberg's financial statements to ORIX Real Estate Capital in Texas. Plaintiff provides evidence that Reinberg sent a letter to ORIX Real Estate Capital Markets to demonstrate Melbourne's due diligence in finding a tenant for the property by which the mortgage was secured.

Plaintiff further notes that ORIX Capital Markets sent a letter to Melbourne in January, 2004, directing that payments be made to LSF4, in care of Hudson Advisors, in Dallas, Texas. Plaintiff alleges that after the assignment, Hudson Advisors, on behalf of Plaintiff, sent notices of payments due under the Renewal Note to Melbourne. Plaintiff provides evidence that Melbourne made seven payments to Hudson Advisors's Dallas office, five of which were checks signed by Reinberg on Melbourne's behalf.

Plaintiff states that the Renewal Note matured on August 18, 2004, and that Melbourne defaulted by failing to make payments after July 1, 2004. Plaintiff alleges that in a telephone call

3

on August 31, 2004, Reinberg proposed that, commencing in September, Melbourne would pay the principal and interest on the Note in exchange for LSF4 granting an extension of the maturity date. Plaintiff further alleges that Reinberg confirmed this offer in a letter sent to a Hudson Advisors' employee, Bruce Rickert, in Dallas, Texas.

In September 2004, Plaintiff commenced foreclosure proceedings in Florida state court against the Florida property that was the subject of the Mortgage securing the Renewal Note. Defendants were originally named as parties in the Florida foreclosure action but were later dismissed. On or about March 14, 2005, the Florida court entered a judgment against Melbourne for the principal due under the Renewal Note, accrued interest, and legal fees. In May 2005, Melbourne filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division, in an action styled *In re R.I.A. Melbourne Limited Partnership, An Ohio Limited Partnership*, Case No. 05-16086.

LSF4 filed suit on March 7, 2006, seeking the unpaid balance on the Renewal Note from the Defendants, as Guarantors under the Renewal Note. Defendants filed a Motion to Dismiss for lack of personal jurisdiction on May 8, 2006. Plaintiff's response, filed on June 14, 2006, included an alternative motion to transfer venue under either 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a) to the Middle District of Florida. Defendants responded to Plaintiff's motion to transfer venue on June 29, 2006, seeking, as an alternative to dismissal, transfer of venue under 28 U.S.C. § 1404(a) to the Northern District of Ohio.

## II. STANDARD OF REVIEW

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the

4

plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). If the district court "rules on the motion without an evidentiary hearing, the plaintiff may satisfy its burden by presenting a *prima facie* case for jurisdiction." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999). In deciding whether a plaintiff has made a *prima facie* case, the Complaint's uncontroverted allegations must be taken as true, and factual conflicts must be resolved in favor of the plaintiff. *Id.* However, even "uncontroverted facts must still be sufficient to affirmatively show personal jurisdiction." *Kisiel v. RAS Sec. Corp.*, No. 3:01-CV-294-X, 2001 WL 912425, at *3 (N.D. Tex. Aug. 9, 2001) (Kendall, J.) (internal citation omitted).

The Court may exercise personal jurisdiction over a nonresident defendant if (1) the Texas long-arm statute establishes personal jurisdiction over the defendant and (2) the exercise of personal jurisdiction is consistent with the United States Constitution's due process requirements. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Because the Texas long-arm statute "reaches to the constitutional limits," the Court need only concern itself with the due process analysis. *See id.* at 470.

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant if:

> (1) [the] defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

5

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 2001) (internal citations omitted).

Two categories of conduct may constitute the requisite minimum contacts with the forum state: "acts specific to the instant suit, which grant a court specific jurisdiction over a defendant; or transactions, although unrelated, that are of such a continuous and systematic nature as to be sufficient to allow a court to assert [general] jurisdiction over the party." *Lexington Servs. Assocs., Ltd. v. 730 Bienville Partners, Ltd.*, No. 3:01-CV-1180-M, 2001 WL 1545764, at *2 (N.D. Tex. Dec. 3, 2001) (Lynn, J.) (quotations omitted).

A federal court lacking personal jurisdiction over defendants may transfer a case under 28 U.S.C. § 1406(a) to another forum where the suit could proceed. *See Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967) ("[Section] 1406 operates when there exists an obstacle -- either incorrect venue, absence of personal jurisdiction, or both -- to a prompt adjudication on the merits in the forum where originally brought . . . . [Section] 1406 operates in cases where the first forum chosen is improper in the sense that the litigation may not proceed there."); *Bentz v. Recile*, 778 F.2d 1026, 1027 (5th Cir. 1985) (stating that a court may transfer under § 1404(a) or § 1406(a) when jurisdiction is lacking); *Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001). The district court has broad discretion in determining whether to dismiss or transfer a case in the interest of justice under § 1406(a). *Soil Bldg. Sys. v. CMI Terex Corp.*, No. 3:04-CV-0210-G, 2004 WL 1283966, *6 (N.D. Tex. June 9, 2004) (Fish, C.J.).

### III. ANALYSIS

*A. Personal Jurisdiction*

Weingart and Reinberg assert that the Court lacks personal jurisdiction over them due to

insufficient contacts with the forum state, Texas.[4] In support of its contention that Defendants are subject to personal jurisdiction in Texas, Plaintiff relies on: (1) seventeen checks Melbourne sent to Texas for payment under the Renewal Note, some of which were signed by Reinberg; (2) telephonic and written communication from Reinberg to Texas about Melbourne's performance under the Note; and (3) broad language in the Renewal Note requiring payment to a New York bank or "at such other place as Payee shall notify Maker in writing," which Plaintiff claims allowed LSF4 to direct payment to Dallas. Defendants argue that they did not knowingly enter a contract requiring performance in Texas, and to support their argument they point to the Florida forum-selection clause and the Florida choice-of-law clause in the Renewal Note.

Plaintiff does not address how Melbourne's contacts with Texas could be imputed to Defendants. *See Meyer v. Mendelson*, No. 3:05-CV-1344-M, 2006 WL 66707, *3 (N.D. Tex. Jan. 11, 2006) (Lynn, J.) (holding that the fiduciary shield doctrine is triggered when a party seeks to attribute a corporation's contacts to an individual defendant).[5] Thus, the court will not consider Melbourne's contacts with Texas when determining whether it has personal jurisdiction over Defendants.

The Court finds Defendants' contacts with Texas insufficient to establish personal jurisdiction over Defendants. In support of its argument, Plaintiff cites *Marathon Metallic Building Co. v. Mountain Empire Construction Co.*, 653 F.2d 921 (5th Cir. 1981). In that case, a

---

[4] Plaintiff does not argue that the Court has general jurisdiction over Defendants. Therefore, the Court addresses only whether it has specific jurisdiction.

[5] Because Plaintiff does not address the fiduciary shield doctrine, the Court does not address the applicability of alter ego, intentional tort, or any other exceptions to the doctrine. *See Meyer*, 2006 WL 66707, at *3 (listing exceptions to the fiduciary shield doctrine).

7

panel of the Fifth Circuit held that an expansive guaranty coupled with a Texas choice-of-law clause created minimum contacts with Texas sufficient to establish specific jurisdiction over the nonresident defendant guarantors. *See id.* at 923; *see also Plainscapital Bank v. Malina*, No. 3:05-CV-0469, 2005 WL 3454017, at *2 (N.D. Tex. Dec. 14, 2005) (Lynn, J.). The guaranty in *Marathon* contained an open-ended obligation which advanced credit over many months to a company identified on the face of the guaranty as located in "Houston, Texas." *Id.* These facts led the Court to determine that the nonresident defendant purposefully and foreseeably created business activity in Texas. *Id.*

In contrast to *Marathon*, here, both the Original Note and the Renewal Note contained a Florida choice-of-law clause and a Florida forum-selection clause. Neither the Note nor the Guaranty contemplated payment to Texas. Thus, *Marathon* does not compel the conclusion that this Court has personal jurisdiction over Defendants. Moreover, Reinberg's signature on some of Melbourne's mailed payments to Texas, Reinberg's communications relating to Melbourne's performance of the Note in Texas, and Defendants' personal guaranty of a contract assigned to a corporation that has an office in Texas do not create sufficient minimum contacts for this Court to establish specific jurisdiction over Defendants. *See Freudensprung*, 379 F.3d at 344 (declaring that "the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific jurisdiction over the nonresident defendant"); *see also Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (finding no specific jurisdiction, despite extensive telephonic and written communications

8

with the forum state and three checks sent to the forum state); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (finding no specific jurisdiction, despite letters, telephone calls, and eight payments sent to the forum state).

The Court similarly finds Plaintiff's arguments regarding place of performance unconvincing. The payments to Texas on behalf of Melbourne cannot be imputed to Defendants; thus, this argument is generally inapposite. Assuming, *arguendo*, that these contacts could be imputed to Reinberg, the contacts still do not create personal jurisdiction over Reinberg in Texas.[6] Plaintiff asserts that because Reinberg signed some of Melbourne's Note payments that were sent to Texas, the Court should consider Texas the place of performance under the Note. Plaintiff thus argues that, because Texas was the place of performance under the Note, the Court can exercise personal jurisdiction over Reinberg, who personally guaranteed Melbourne's performance under the Note. However, as noted earlier, the instant Note expressly allowed LSF4 to change the location to which payments should be sent upon written notice to Defendants. As a result, Plaintiffs could conceivably require that Reinberg and Weingart, upon a default by Melbourne, direct payment to any forum, thereby subjecting them to jurisdiction in such forum. Even assuming, *arguendo*, that the Court considered Texas the place of performance under the Note, the place of performance is not automatically determinative of personal jurisdiction. *See Pilgrim's Pride Corp. v. ASFI, Inc.*, No. 206-CV-80, 2006 WL 984695, at *2 (E.D. Tex. Apr. 13, 2006) (Davis, J.) (citing *Electrosource Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 874

---

[6] Plaintiff does not assert that Weingart signed any of the checks Melbourne mailed to Texas, nor does Plaintiff assert that Weingart communicated with Texas on behalf of Melbourne. Thus, Plaintiff's argument regarding place of actual acts of performance applies only to Reinberg.

9

(5th Cir. 1999)). Moreover, a plaintiff's unilateral decision to require performance in the forum state diminishes this factor's weight. *See id.* (citing *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992)). In this case, LSF4 made the unilateral decision to direct Defendants' performance under the Note to Texas. The Court finds that this contact, created through LSF4's unilateral demand, even in combination with Reinberg's other contacts with Texas, is insufficient to support the Court's exercise of personal jurisdiction over Reinberg, and thus also insufficient as to Weingart. *See Freudensprung*, 379 F.3d at 344.

*B. Transfer*

Having determined that this Court lacks personal jurisdiction over Defendants, the Court next evaluates whether to dismiss or transfer. After conducting a balancing test weighing the factors in favor of transferring the case to Ohio or Florida, the Court determines it would be in the interests of justice to transfer the case to Ohio pursuant to 28 U.S.C. § 1406(a).

Rather than dismissing a case filed in the wrong district, a district court has the discretion under 28 U.S.C. § 1406(a) to transfer the case to a district in which it could have been brought. *See Dubin*, 380 F.2d at 816; *see also Burr v. Transohio Savings Bank*, No. 95-20144, 1995 WL 798590, at *4 (5th Cir. 1995) (unpublished).

Defendants seek an alternate transfer to the Northern District of Ohio, while Plaintiff seeks an alternate transfer to the Middle District of Florida. The Court determines that venue would be proper in Ohio pursuant to 28 U.S.C. § 1391(a)(1), which allows a case to be brought in a judicial district where any Defendant resides, if all of the Defendants reside in the same state. *See* 28 U.S.C. § 1391(a)(1). Based on Defendants' amended affidavits, both Defendant Reinberg

10

and Defendant Weingart reside in Ohio. Def. Aff. at 1. Venue may also be proper in Florida, but because the Court decides to transfer the case to the Northern District of Ohio, the Court does not reach this question. Therefore, the Court **TRANSFERS** the case under § 1406(a) to the Northern District of Ohio.

Assuming, *arguendo*, that venue is proper in Florida, the Court would nonetheless transfer the case to Ohio. If Plaintiff filed a motion to transfer to Florida in an Ohio district court, that court would apply § 1404(a). A court considers the following factors in evaluating a motion to transfer venue under that section: (1) the convenience of the parties; (2) the convenience of material witnesses; (3) the availability of process to compel the presence of unwilling witnesses; (4) the cost of obtaining the presence of witnesses; (5) the relative ease of access to sources of proof; (6) calendar congestion; (7) the location of the events in issue; and (8) the interests of justice in general. *Woolf v. Mary Kay Inc.*, 176 F. Supp. 2d 642, 647 (N.D. Tex. 2001) (Fish, J.); *see also Sw. Sec. Bank v. Sw. Bank*, 3:04-CV-1738-M, 2004 U.S. Dist. LEXIS 25858, *2 (N.D. Tex. Dec. 23, 2004) (Lynn, J.). Therefore, this Court should employ the same analysis in determining whether to transfer to Ohio or Florida under § 1406(a). *See Burr*, 1995 WL 798590, at *4 n.13 (stating that, on remand, the Texas district court could choose to transfer a case between two forums outside Texas where venue would be proper). If the Court were to weigh the factors under a § 1404(a) analysis, however, the Court would still transfer to Ohio. Defendants are both Ohio residents, and plaintiffs are neither residents of Ohio nor Florida. Two of the material witnesses are Ohio residents. Two other witnesses are Texas residents, who will be no more inconvenienced by testifying in Florida than by testifying in Ohio. While a Florida property was the subject of the mortgage securing the Original and Renewal Notes and

foreclosure proceedings on that property occurred in Florida, Melbourne's bankruptcy proceeding, which Defendants claim precipitated the default leading to this suit, occurred in Ohio.

The Court recognizes the existence of the Florida forum-selection clause and the Florida choice-of-law provision in the Note. In the context of a motion to transfer under 28 U.S.C. 1406(a), this forum-selection clause is *prima facie* valid. *Int'l Software Sys. v. Amplicon*, 77 F.3d 112, 114-15 (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Because the Court finds the forum-selection clause permissive rather than mandatory, however, this forum-selection clause is only one factor in the balancing test. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (explaining balancing test applied by the Fifth Circuit in *Amplicon*, 77 F.3d 112, 114-115 (5th Cir. 1996))[7]. The Court finds that the other factors favoring transfer to Ohio outweigh the existence of the permissive forum-selection and choice-of-law clauses favoring Florida. Therefore, even if venue is proper in Florida, the Court would still transfer the case to the Northern District of Ohio.

---

[7] The Court notes that neither Plaintiff, who initially filed suit in Texas, nor Defendants, who wish to transfer this case to Ohio, argue that the Florida forum-selection clause is controlling. The Court finds the language "non-exclusive jurisdiction" in the forum-selection clause sufficiently broad to make the clause a permissive, rather than a mandatory, forum-selection clause such that Florida is not the exclusive venue in which the suit must be brought. *See Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 128 (5th Cir. 1994) (determining forum-selection clause "the laws and courts of Zurich are applicable" did not clearly indicate that the parties intended to declare Zurich the exclusive forum for disputes); *Greencorp Fin. Ltd. P'ship v. GMAC Commercial Mortgage Corp.*, No. 03-CV-3098-B, 2005 WL 762608, at *4 (N.D. Tex. Apr. 1, 2005) (Boyle, J.) (determining forum-selection clause with words "non-exclusive jurisdiction" was permissive forum-selection clause authorizing jurisdiction in the chosen forum but not prohibiting litigation elsewhere).

## IV. CONCLUSION

Accordingly, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED IN PART**, and the Court finds that it does not have personal jurisdiction over Defendants. The Motion is otherwise **DENIED**. Defendant's Motion to Transfer is **GRANTED**, and the Court **TRANSFERS** the case to the Northern District of Ohio. The Court **DENIES** Plaintiff's Motion to Transfer.

**SO ORDERED.**

August 15, 2006.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS